UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEO MERAZ, | No. C 08-4540 MHP (pr) |
|     Plaintiff, | **ORDER DENYING MOTION TO DISMISS AND REFERRING ACTION TO PRISONER MEDIATION PROGRAM** |
|     v. | |
| STEVEN REPPOND; et al., | |
|     Defendants. | |

## INTRODUCTION

Leo Meraz, an inmate currently at the California State Prison - Sacramento, filed this pro se civil rights action under 42 U.S.C. § 1983 concerning conditions he experienced while incarcerated at Pelican Bay State Prison. The action is now before the court for consideration of four defendants' motion to dismiss and plaintiff's motion to compel a fifth defendant to file an answer. The court will deny the motions and refer the action to the Pro Se Prisoner Mediation Program.

## BACKGROUND

In his amended complaint, Meraz alleged the following about an incident that occurred on December 5, 2007 at Pelican Bay: On that day, Meraz was going to a chapel service and realized that unclothed body inspections were going to be done. He didn't want to be searched, so he tried to return to the housing unit. When he arrived at the housing unit, he was handcuffed and put in a holding cell. He was then taken to the sergeant's office. Correctional lieutenant Reppond shook him forcefully, slammed his face into a concrete wall four times, and slammed him onto the ground. Correctional officer ("C/O") Allen

1 Risenhoover, C/O C. W. Speaker, C/O James Thom, and correctional sergeant A. Navarro
2 "stood by un-responsive observing" as Reppond used force on Meraz.  Amended Complaint,
3 pp. 5, 6.

4       Upon initial review, the court determined that a cognizable § 1983 claim was stated
5 based on these allegations and dismissed claims based on other incidents.  The court wrote:
6 "Liberally construed, the amended complaint states a § 1983 claim against defendants
7 Reppond, Risenhoover, Speaker, Thom, and Navarro for the alleged use of excessive force
8 on Meraz on December 5, 2007.  Although only Reppond is alleged to have actually hit
9 Meraz, the allegations that the others stood by, observing but failing to intervene, liberally
10 construed, are sufficient to state a claim for relief against them as well as the individual who
11 allegedly inflicted the blows.  See Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995)
12 (prison official's failure to intervene to prevent 8th Amendment violation may be basis for
13 liability)."  Order of Service, pp. 2-3.

14       Defendants Risenhoover, Speaker, Thom, and Navarro – but not Reppond – have
15 moved to dismiss on the ground that Meraz did not exhaust his administrative remedies
16 before filing this action.   Defendants argue that Meraz's one administrative appeal
17 concerning the December 5, 2007 incident did not exhaust his administrative remedies for the
18 claim against them because it did not mention their failure to intervene and did not seek relief
19 against them.

20       Meraz's inmate appeal was first submitted on December 11, 2007.  In it, he wrote that
21 he was "physically assaulted by lieutenant Resppon/Reppond."  Walch Decl., Ex. B.  In the
22 "action requested" portion of the form, Meraz wrote that he wanted "lt. Responnd to be
23 investigated concerning the assault against Meraz J-04563, reprimanded and held liable for
24 the pain and suffering he caused Meraz J-04563.  Also, requesting an poligraph examination
25 in accordance with C.C.R. 3293(a)."  Id. at § B (errors in source). In the appeal, Meraz
26 described the circumstances surrounding the incident.  Among other things, Meraz wrote that
27 defendants Risenhoover and Speaker escorted him in handcuffs first to a holding cell, and
28 then to lieutenant Reppond and sergeant Juarez.  At that point, Meraz was grabbed and hit by

2

1   lieutenant Reppond, according to Meraz's inmate appeal.  Meraz also wrote that after being
2   hit by Reppond several times, he was slammed to the floor and lieutenant Reppond "began to
3   cuttoff (sic) the state issue clothing I was wearing with the assistance of sgt. Juarez and C/O
4   Speaker and C/O Risenhoover.  This concluded the physical assault by the lt. Reppond."
5   Id. (errors in source).  Meraz also stated that there was no reason to remove him from the
6   holding cell except to enable Reppond to physically assault him.  Id.

    Meraz's inmate appeal was logged as inmate appeal log number PBSP # S08-00002.
8   The appeal eventually was denied at the director's level on July 2, 2008.  The director's level
9   decision noted that the "incident had been referred to the Office of Internal Affairs for
10  review.  In the event that staff misconduct is substantiated, the institution will take the
11  appropriate course of action.  All staff personnel matters are confidential in nature . . . .
12  However, upon completion of final review, or culmination of an investigation, the appellant
13  will be notified by the respective investigative body that an inquiry has been completed and
14  whether the complaint was, or was not, in compliance with CDCR policy."   Walch Decl.,
15  Exh. B, July 2, 2008 director's level appeal decision.  The director's level decision also stated
16  that the decision exhausted administrative remedies available to the inmate.

## DISCUSSION

A.   Motion To Dismiss

19  "No action shall be brought with respect to prison conditions under [42 U.S.C. §
20  1983], or any other Federal law, by a prisoner confined in any jail, prison, or other
21  correctional facility until such administrative remedies as are available are exhausted."  42
22  U.S.C. § 1997e(a).  The State of California provides its inmates and parolees the right to
23  appeal administratively "any departmental decision, action, condition or policy perceived by
24  those individuals as adversely affecting their welfare."  See Cal. Code Regs. tit. 15, §
25  3084.1(a).  In order to exhaust available administrative remedies within this system, a
26  prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal
27  written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution
28  head or designee, and (4) third level appeal to the Director of the California Department of

Corrections. See id. § 3084.5; Woodford v. Ngo, 548 U.S. 81, 85-86 (2006).

Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Id. (citation omitted). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). The statute requires "proper exhaustion" of available administrative remedies. See Woodford v. Ngo, 548 U.S. at 93.

A prisoner's failure to exhaust administrative remedies is a matter in abatement. Defendants have the burden of raising and proving the absence of exhaustion, and may do so by way of an unenumerated Rule12(b) motion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20, citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1988). The court can decide factual issues in a jurisdictional or related type of motion because there is no right to a jury trial as to that portion of the case, unlike the merits of the case (where there is a right to a jury trial). See id. Wyatt and Ritza allow this court to resolve factual disputes, but only with regard to the exhaustion issue.

The four moving defendants argue that Meraz's claims against them should be dismissed because the one administrative appeal Meraz filed did not allege that any defendant failed to intervene to prevent the alleged use of excessive force, and because the only relief sought in the administrative appeal was against the non-moving defendant, Reppond. These arguments require one to focus on what is required to "properly exhaust."

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). In California, the regulation requires the prisoner "to lodge his administrative complaint on CDC form 602 and 'to describe the problem and action

4

requested.'" Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010) (quoting Cal. Code Regs. tit. 15 § 3084.2(a)). In light of the absence of any mention in the California regulation about the requisite level of factual specificity, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)); see, e.g., Morton, 599 F.3d at 946 (grievance that complained of visitation restrictions, and did not mention an assault or theorize that the visitation restriction imposed was related to the assault, was insufficient to put prison officials on notice that staff conduct contributed to the assault); O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1062-63 (9th Cir. 2007) (grievance requesting a lower bunk due to poor balance resulting from a previous brain injury was not equivalent to, and therefore did not exhaust administrative remedies for, claims of denial of mental health treatment in violation of the ADA and Rehabilitation Act). The grievance need not include legal terminology or legal theories unless they are needed to provide notice of the harm being grieved. Griffin, 557 F.3d at 1120. Nor must a grievance include every fact necessary to prove each element of an eventual legal claim. Id.

Having compared the § 1983 claims with the inmate appeal, the court concludes that Meraz did exhaust administrative remedies regarding the claims in his amended complaint against the moving defendants. Meraz's inmate appeal focused on Reppond, but also provided information that other guards were present during Reppond's assault. For example, Meraz stated in his grievance that correctional officers Risenhoover and Speak – two of the four moving defendants – brought him to Reppond before the assault and helped Reppond cut Meraz's clothes off after Reppond assaulted him. (The clothes removal was part of a search for contraband, rather than part of the assault.) The inmate appeal thus indicates that there were correctional officers present when Reppond attacked Meraz, and does not indicate that they did anything to stop the attack. This is the gist of Meraz's § 1983 failure-to-interevene claim against the bystander correctional officers. The fact that Meraz did not mention the other two moving defendants as being present is immaterial to the exhaustion question because he was not required by the regulation to name each of the wrongdoers. See

1 Jones, 549 U.S. at 219.  The fact that he did not articulate a failure-to-intervene theory of
2 liability also does not make the inmate appeal deficient, as it is not necessary to allege a legal
3 theory unless that is needed to provide notice of the harm being grieved.  See Griffin, 557
4 F.3d at 1120.  Not only was it unnecessary to provide the legal theory, providing a lesser
5 known legal theory (such as the failure-to-intervene theory) may be particularly difficult for
6 California inmates who have only 15 days to file an inmate appeal and who have limited
7 access to any legal materials.  Meraz's inmate appeal provided enough information about the
8 December 5, 2007 incident that a reasonable investigation of it would have uncovered (if
9 true) that there were guards who stood by and let Reppond assault him for no reason.

10       If a prisoner genuinely wanted relief in the administrative appeal process, he would
11 help his cause greatly by being very specific and clear about what happened and what he
12 wanted, but the failure to do so does not mean he has not exhausted administrative remedies.
13 Proper exhaustion requires a minimum level of information rather than an optimal level of
14 information.  Meraz provided the minimum level of information necessary to exhaust
15 administrative remedies.  Defendants' motion to dismiss for failure to exhaust administrative
16 remedies therefore is DENIED.  (Docket # 18.)

17 B.    Meraz's Motion To Compel Reppond To File An Answer

18       Meraz's motion to compel defendant Reppond to file an answer is DENIED.  (Docket
19 # 24.)  Defendant Reppond had filed and served an answer more than a month before Meraz
20 filed this motion.   (The court notes that the proof of service form for Reppond's filings has
21 an incorrect ZIP code for Meraz's address.  Counsel should remedy that problem to avoid
22 unnecessary delay in future mailings to Meraz.)

23 C.    Referral To Mediation Program

24       The court has a Pro Se Prisoner Mediation Program in which selected prisoner cases
25 with unrepresented plaintiffs are referred to a neutral magistrate judge for mediation
26 proceedings consisting of one or more conferences as determined by the mediator.  Good
27 cause appearing therefor, this case is now referred to Magistrate Judge Vadas for mediation
28 proceedings pursuant to the Pro Se Prisoner Mediation Program.  The proceeding will take

6

place within ninety days of the date this order is filed. Magistrate Judge Vadas will coordinate a time and date for a mediation proceeding with all interested parties and/or their representatives and, within five days after the conclusion of the mediation proceedings, file with the court a report for the prisoner mediation proceedings.  The clerk will send to Magistrate Judge Vadas a copy of the case file for this action.

## CONCLUSION

Defendants' motion to dismiss is DENIED.  (Docket # 14.)

Plaintiff's motion to compel defendant Reppond to file an answer is DENIED. (Docket # 24.)

This action is now referred to the Pro Se Prisoner Mediation Program.

IT IS SO ORDERED.

Dated: July 1, 2010

_____
Marilyn Hall Patel
United States District Judge